STATE OF HAWAII, Plaintiff-Appellee, *v.* ALBERT IAUKEA, Defendant-Appellant

NO. 5688

JUNE 16, 1975

RICHARDSON, C.J., KOBAYASHI, OGATA, JJ.,
HAYASHI, Circuit Judge, in Place of
MENOR, J., Disqualified, and KATO,
Circuit Judge, Assigned by Reason of Vacancy

344

OPINION OF THE COURT BY OGATA, J.

Defendant-appellant, Albert Iaukea (hereinafter appellant), was tried for and convicted of rape in the first degree, sodomy in the first degree, robbery in the first degree, and unauthorized operation of a propelled vehicle in a jury trial before the Third Circuit Court. The appellant was sentenced by the court to life imprisonment under the extended term provisions of HRS §§ 706-661 and 706-662(4), as a multiple offender.

He now appeals from the judgment and sentence. He presents for our consideration the following contentions:(1) that the testimony by the complaining witness about appellant's three prior assaults against women and a rape charge pending against him at the time of the alleged rape of the complaining witness deprived appellant of due process; (2) that the court erred when it denied appellant's motion for a mistrial when references were made to prior assaults and alleged. prior rape; (3) that the court erred in denying appellant's motion for judgment of acquittal for robbery in the first degree and unauthorized operation of a propelled vehicle at the close of the State's case; (4) that the court erred in giving State's requested instruction No. 22 over appellant's objection; and (5) that the sentence of life imprisonment imposed by the court upon appellant as a multiple offender

constitutes cruel or unusual punishment under the Federal and State Constitutions. For reasons hereinafter set forth, we hold thàt appellant's contentions are without merit.

The appellant was referred for counseling by the public defender to the complaining witness, a thirty-one year old psychiatric social worker at the Hilo Counseling Center. The complaining witness held her first interview with appellant on Wednesday, February 13, 1974. At this session, appellant informed the complaining witness that he would have to appear in court that Friday, February 15, 1974. The complaining witness further learned, at that time, many details of appellant's criminal record and obtained a great deal of information about his family background and social problems. She learned that the upcoming trial involved a rape charge. Appellant returned to the office of the complaining witness unexpectedly the next afternoon, Thursday, February 14, 1974. The complaining witness testified that she could smell liquor on his breath. Appellant told her that he had an argument with his girlfriend that morning. The complaining witness feared that appellant might get himself into more trouble and even fail to appear in court the next day if left alone in a troubled state. She, therefore, inquired if he had any friends or relatives he could stay with. Appellant then stated he thought he could stay with his aunt in Keaukaha. Appellant then feigned a telephone call to his aunt.[1] He spoke as though his aunt agreed to let him stay with her. The complaining witness then offered to drive appellant to his aunt's house, because she believed that he would be less likely to get into trouble and fail to appear in court if she did so. The complaining witness further testified that she and others employed at the Hilo Counseling Center often provide rides for patients.

The complaining witness and the appellant drove from the Hilo Counseling Center to Keaukaha in the complaining

---

[1] Appellant's aunt testified that she did not receive any telephone calls from appellant during the month of February 1974.

witness's 1968 Mustang. Appellant directed the complaining witness to drive along the Escape Road (in Keaukaha), on the pretext that his aunt's home was in that direction. After the 1968 Mustang had reached a deserted stretch of the Escape Road, the appellant grabbed the complaining witness around her neck and held a knife to her stomach. The appellant then proceeded to commit the acts of rape and sodomy which formed the basis of the charges.

The testimony of the complaining witness contained several references to the appellant's use of the knife to threaten her and to his use of his greater size and strength to overcome her will. She also testified that she tried to talk the appellant out of raping or hurting her, but to no avail. She stated that her training as a psychiatric social worker had taught her to cope with crisis situations in a calm manner. Moreover, she did not wish to excite appellant to greater violence because then he might use the knife on her. Her fear was heightened by her knowledge of his past history of assaults and pending rape charge. The victim was further put in fear by appellant's statement to the effect that since he was going to go to jail anyway, it didn't matter what he did to her.

After the commission of rape and sodomy, appellant asked the complaining witness if she had any money. She admitted to him that she had forty dollars in her purse. The appellant dumped out the purse, went through the contents and took the money. The appellant then threw the money back on the car seat, saying he wasn't going to need it because he was going to jail, but he then grabbed the money back.

The complaining witness testified that appellant asked her several times if she was going to "tell." She was afraid to admit that she was going to "tell," "because then, I thought that he wasn't going to let me live." The appellant then told the victim to get out of her car. Thereafter, appellant drove off at a very fast speed. The complaining witness walked for approximately twenty minutes and came to a house. From there, she was able to telephone the police to report the incident.

348

I.

Appellant contends that references in the testimony of the complaining witness to alleged past crimes, court appearances in regard to a pending rape charge and going to jail were highly prejudicial to him. He asserts that such testimony should not have been admitted and that once the jury heard the testimony the trial judge should have declared a mistrial.

The State contends that the testimony was properly admitted because it was relevant to the elements of the crimes of rape and sodomy.[2]

The admission of evidence which tends to prove the commission of crimes other than the crime charged gives rise to several problems. The jury may believe that the defendant is guilty merely because he is a likely person to do such acts. *Territory v. Caminos,* 38 Haw. 628 (1950). Furthermore, the defendant may be unprepared to defend himself against the evidence of collateral crimes. *State v. Spreigl,* 272 Minn. 488,

---

[2] The language of HRS §§ 707-730 and 707-733, in effect at the time of the incident, read in relevant part as follows:

"Sec. 707-730 *Rape in the first degree.* (1) A male commits the offense of rape in the first degree if:

(a) He intentionally engages in sexual intercourse, by forcible compulsion, with a female and:

(i) The female is not, upon the occasion, his voluntary social companion who had within the previous twelve months permitted him sexual contact;

\*         \*         \*         \*         \*

(2) Rape in the first degree is a class A felony."

"Sec. 707-733 *Sodomy in the first degree.* (1) A person commits the offense of sodomy in the first degree if:

(a) He intentionally, by forcible compulsion, engages in deviate sexual intercourse with another person or causes another person to engage in deviate sexual intercourse, and:

(i) The other person was not, upon the occasion, his voluntary social companion who had within the previous twelve months permitted him sexual contact of the kind involved;

\*         \*         \*         \*         \*

(2) Sodomy in the first degree is a class A felony.

139 N.W.2d 167 (1965). The responsibility for maintaining the delicate balance between probative value and prejudicial effect lies largely within the discretion of the trial court. *Elsbury v. State,* Nev. , 518 P.2d 599 (1974); *State v. Spreigl, supra.*

The rule of evidence pertaining to evidence of other crimes has two basic formulations. One is an affirmative statement of the conditions of admissibility and the other is an exclusionary rule with exceptions.[3] Thus with reference to the first formulation, it was stated in *People v. Peete,* 28 Cal. 2d 306, 315-316, 169 P.2d 924, 929-930 (1946), as follows:

". . . except when it shows merely criminal disposition [citations omitted], evidence that is relevant is not excluded because it reveals the commission of an offense other than that charged. 'The general tests of the admissibility of evidence in a criminal case are: * * * does it tend logically, naturally, and by reasonable inference to establish any fact material for the people, or to overcome any material matter sought to be proved by the defense? If it does, then it is admissible, whether it embraces the commission of another crime or does not, whether the other crime be similar in kind or not, whether it be part of a single design or not.' [citations omitted] 'It is true that in trying a person charged with one offense it is ordinarily inadmissible to offer proof of another and distinct offense, but this is only because the proof of a distinct offense has ordinarily no tendency to establish the offense charged; But whenever the case is such that proof of one crime tends to prove any fact material in the trial of another, such proof is admissible, and the fact that it may tend to prejudice the defendant in the minds of jurors is no ground for its exclusion.' " [citations omitted]

---

[3] Julius Stone in his law review article discussed and followed in numerous decisions prefers the affirmative formulation of the rule regarding the admissibility of facts tending to show the commission of crimes other than the crime for which defendant is being tried. Stone, *"The Rule of Exclusion of Similar Fact Evidence: America,"* 51 Harvard Law Review 988 (1938).

In accord: *United States v. Carney,* 461 F.2d 465 (3rd Cir. 1972); *United States v. Stirone,* 262 F.2d 571 (3rd Cir. 1958); *Nester v. State,* 75 Nev. 41, 334 P.2d 524 (1959); *State v. Long,* 195 Or. 81, 244 P.2d 1033 (1952).

The alternative formulation of the rule concerning evidence of collateral crimes, which is structured as an exclusionary rule with several categories of exceptions, is the form of the rule cited in numerous opinions from numerous jurisdictions. The landmark opinion from which many such opinions sprang is that of Judge Werner of the New York Court of Appeals in *People v. Molineux,* 168 N.Y. 264, 61 N.E.286 (1901). That opinion stated:

> "The general rule of evidence applicable to criminal trials is that the state cannot prove against a defendant any crime not alleged in the indictment, either as a foundation for a separate punishment, or as aiding the proofs that he is guilty of the crime charged." 168 N.Y. at 291, 61 N.E. at 293.

The opinion went on to say:

> "The exceptions to the rule cannot be stated with categorical precision. Generally speaking, evidence of other crimes is competent to prove the specific crime charged when it tends to establish (1) motive; (2) intent; (3) the absence of mistake or accident; (4) a common scheme or plan embracing the commission of two or more crimes so related to each other that proof of one tends to establish the others; (5) the identity of the person charged with the commission of the crime on trial. Whart. Cr. Ev. (9th Ed.) § 48; Underh. Ev. § 58; Abb. Tr. Brief, Cr. § 598." 168 N.Y. at 293, 61 N.E. at 294.

Stating the rule in this manner usually requires the court to enumerate and define the exceptions. The attempt to grapple with the enumeration and definition of the exceptions to the exclusionary rule has caused some courts to come almost full circle back to the affirmative statement of the rule, as did the Arizona Supreme Court, in *State v. Hill,* 104 Ariz. 238, 239, 450 P.2d 696, 697 (1969):

" '* * * The general rule is that evidence is inadmissible which tends to prove that the accused committed a crime other than the one charged in the indictment. But this rule is subject to certain well-established exceptions "to the end that all relevant facts and circumstances *tending to establish any of the constituent elements of the crime" for which the accused is on trial may be made to appear.'* *Witters v. United States,* 70 App.D.C. 316, 106 F.2d 837, 125 A.L.R. (1939). [Emphasis supplied]"

Both approaches are sometimes used within the same opinion.[4] Stone criticizes this combination of approaches, contending that it is injurious to the effective and fair administration of justice.[5] Careful application, however, should avoid the problem. It the requirements of relevancy to proof of an element of the crime charged, balance of probative value against prejudicial effect, and a flexible use of the exception categories primarily as indices of relevancy are met, then this method should permit the court to make use of both formulations. The case at bar is easily decided under the affirmative, more generally worded formulation of the rule. The testimony in controversy regarding other criminal acts allegedly committed by the defendant is relevant and material to the proof of an element of the crimes charged in the indictment; that element is forcible compulsion. This is, of course, an issue wholly distinct from propensity or bad character.

This case is distinguishable from *State v. Kahinu,* 53 Haw. 536, 498 P.2d 635 (1972), because the testimony[6] given

---

[4] State v. Yoshida, 45 Haw. 50, 361 P.2d 1032 (1961); State v. Carvelo, 45 Haw. 16, 361 P.2d 45 (1961); Territory v. Caminos, *supra;* Younger v. State, 301 So.2d 300 (Miss. 1974); State v. Thompson, 110 Ariz. 165, 516 P.2d 42 (1973); State v. Tracy, 246 Or. 349, 425 P.2d 171 (1967).

[5] Stone, *supra,* at 1037.

[6] The improper testimony referred to the fact that the defendant had been in police custody on another charge. The court held in *Kahinu* it was clear beyond a reasonable doubt that the inadmissible testimony did not contribute to the verdict and that the error was, therefore, harmless. The court stated, however, that such testimony could sometimes be so prejudicial as to require a mistrial or a reversal. The court further stated that if no mistrial were declared, a cautionary instruction would be required.

by a police detective in that case, which was characterized as "the evidential harpoon" (53 Haw. at 548), was completely irrelevant to the issues at trial. The challenged testimony of the complaining witness in the case at bar is highly relevant to the major issue therein. We observe, further, that in keeping with the spirit of the *Kahinu* decision, the trial court in the instant case gave cautionary instructions regarding the limited use of the controversial testimony.

The testimony of the complaining witness concerning the prior crimes which, to her knowledge, appellant had committed, credibly explained and placed in context many of her statements to and actions toward him. Her fear of the appellant was in part due to his past history of attacks on women. The complaining witness made every effort to remain calm and to refrain from screaming because of her training as a psychiatric social worker. In her judgment she had a better chance of avoiding serious bodily injury if she remained calm. She feared that he would "cut her up" if she tried to fight him.

It was important that the jury know all of the facts involved so that they would not mistakenly construe the complaining witness's calm manner and lack of screaming as indicative of consent or lack of forcible compulsion. Moreover, the appellant himself was aware of the complaining witness's knowledge of his history. It is highly unlikely that he construed her statements and actions as consent. It was important to apprise the jury of this. Furthermore, it was also essential for the jury to fully understand why the complaining witness offered to drive the defendant to his aunt's house, so as not to draw the erroneous conclusion that she was his voluntary social companion.

The California Court of Appeals in *People v. Nazworth,* 152 Cal. App. 2d 790, 794, 313 P.2d 113, 116 (1957), allowed evidence of other crimes to be admitted to show the state of mind of the prosecutrix, so that the jury could pass upon her conduct at the time in question. In that case the prosecutrix testified that, " 'He (defendant) had beat up two other girls'; that she knew he was wanted by the F.B.I. before; that he had knife fights with his father and that he shot her aunt before." 313 P.2d at 116. The Court of Appeals held: "Appellant in his

cross-examination of the complaining witness attacked the credibility of her testimony and no prejudicial error resulted from the admission of her statement as to why she was afraid of the defendant." 313 P.2d at 116.

The Oregon Supreme Court in *State v. Tracy*, 246 Ore. 349, 425 P.2d 171 (1967), held that the testimony of the prosecutrix in a rape case was properly admitted where she testified to her knowledge that the defendant had been in an altercation earlier in the evening and she further testified that the defendant had threatened to "beat up" her escort if she did not accompany the defendant. The Oregon Supreme Court held that no error had been committed in the admission of this testimony because of its relevance to the issue of consent. *State v. Tracy, supra,* and *State v. Nazworth, supra,* are clearly similar to the case at bar. In each of the three cases the complaining witness had to refer to evidence of other crimes in order to explain why she feared the appellant and to place her own actions in proper context.[7]

In *Fields v. State*, 235 Ark. 986, 363 S.W.2d 905 (1963), a rape victim testified that the defendant had told her that he "had just killed a man, and what he was going to do now wouldn't be any worse than what he had already done." The Supreme Court of Arkansas affirmed the conviction and observed that such a statement might be made by a rapist to his victim to instill fear in the victim, whether or not the statement were true. In the instant case the complaining witness testified that the appellant told her more than once that he was "going to jail anyway." This testimony is admissible for its probable effect on the complaining witness's state of mind despite the fact that it tends to indicate that the appellant may have committed other crimes.

It is difficult to place this situation into one of the traditional exceptions to the exclusionary form of the rule. However, it could be said that the testimony in controversy could be fitted into the "scheme, plan or design" exception.[8] The

[7] In accord: Younger v. State, *supra;* State v. Louf, 64 N.J. 172, 313 A.2d 793 (1973); State v. Hancock, 245 Or. 240, 421 P.2d 687 (1966); State v. Long, *supra.*

[8] The Oregon Supreme Court explained this exception in *State v. Long, supra.*

appellant, in a sense, capitalized on his own history and the complaining witness's knowledge of it to create the scenario for the crime. He further took advantage of his record to instill an extra measure of fear in his victim. The evidence would, therefore, be admissible under this formulation of the rule as well. *See, State v. Yoshino,* 45 Haw. 206, 364 P.2d 638 (1961); *State v. Yoshida,* 45 Haw. 50, 361 P.2d 1032 (1961); *State v. Carvelo,* 45 Haw. 16, 361 P.2d 45 (1961); *Territory v. Abellana,* 38 Haw. 532 (1950).

We hold that the testimony in controversy was properly admitted under either approach.

## II.

Since we now hold the challenged testimony to have been properly admitted, we, of course, also hold that the trial court did not abuse its discretion in denying appellant's motion for a mistrial. Denial of a motion for a mistrial is generally a matter within the sound discretion of the trial court. *State v. Kahinu, supra.*

## III.

Appellant contends that the trial court erred by giving State's instruction No. 22 over his objection. The State argues that appellant failed to make a sufficient objection to the instruction as required by Rule 30(e) H.R.Cr.P., and moreover, that the instruction was a proper one. The appellant, in reply, asserts that even if his objection was held not to comply with Rule 30(e), H.R.Cr.P., we could review the challenged instruction as plain error affecting the substantial rights of appellant under Rule 52(b) H.R.Cr.P.

Rule 30 (e) H.R.Cr.P., provides in part:

"(e) Instructions and Objections. . . . No party may assign as error the giving or the refusal to give, or the modification of, an instruction, whether settled pursuant to subdivision (b) or subdivision (c) of this rule, unless he objects thereto before the jury retires to consider its verdict, stating *distinctly* the matter to which he objects

and the *grounds* of his objection . . . ." (Emphasis added.)

Rule 52(b), H.R.Cr.P., reads as follows:

"(b) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court."

Pursuant to Rule 52(b), H.R.Cr.P., we have the power, *sua sponte,* to notice plain errors or defects in the record affecting substantial rights not properly brought to the attention of the trial judge or raised on appeal. *State v. Yoshino,* 50 Haw. 287, 289, 439 P.2d 666, 668 (1968); *State v. Cummings,* 49 Haw. 522, 528, 423 P.2d 438, 442 (1967); *State v. Ruiz,* 49 Haw. 504, 507, 421 P.2d 305, 308 (1966).

The following colloquy occurred during the settlement of instructions in open court, on the record, without the jury present:

"The Court: All right. As to State's instruction No. 22, this will be given over objections. Mr. Oda, any objections for the record.

Mr. Oda: The defense objects to instruction No. 22, for the record."

The appellant did not distinctly state the matter to which he objected by presenting specific grounds of his objection. *See, State v. Shon,* 47 Haw. 158, 385 P.2d 830 (1963); *State v. Arena,* 46 Haw. 315, 379 P.2d 594 (1963). Appellant contends he had already stated his objection off the record. Since the court stated that the instruction would be given "over objections," it is apparent that appellant had previously raised an objection to it. However, since that statement is absent from the record, it is impossible for an appellate court to ascertain whether the objections made in chambers, or the nature thereof, met the requirements of Rule 30(e), H.R.Cr.P.

The trial court did not commit error, plain or otherwise, by giving State's instruction No. 22. This specification of error does not, therefore, qualify for treatment under Rule 52(b), H.R.Cr.P., but we will discuss the issue raised because it could have affected the appellant's substantial rights, including the length of his sentence.

State's requested instruction No. 22 reads as follows:

"The law does not require that the use of force or the threatened imminent use of force be done for the very purpose of taking the victim's property. If you find that the defendant, while armed with a dangerous instrument threatened the imminent use of force for the purpose of sexual intercourse or deviate sexual intercourse, and that he later formed the design to take the property, you may find that he threatened the imminent use of force with intent to compel acquiescence to the taking of the property."

Hawaii Revised Statutes defines robbery, in relevant part, as follows:

"Sec. 708-840 *Robbery in the first degree.*

(1) A person commits the offense of robbery in the first degree if, in the course of committing theft:

\*　　\*　　\*　　\*　　\*

(b) He is armed with a dangerous instrument and:

(i) He uses force against the person of the owner or any person present with intent to overcome the owner's physical resistance or physical power of resistance; or

(ii) He threatens the imminent use of force against the person of anyone who is present with intent to compel acquiescence to the taking of or escaping with the property."

Appellant had alternately brandished his knife and returned it to his pocket several times during the incident. The duration of the incident was measurable in minutes rather than hours. The complaining witness was kept under a continuing threat of force and violence. The appellant showed no reluctance to draw the knife whenever it appeared that his victim might refuse to comply with his wishes. While his primary goal was to commit rape, he clearly took advantage of the fear his prior threats and use of force instilled in his victim to take her money as well. The record indicates that only moments before the money was taken, the appellant held the knife to the neck of the complaining witness to prevent her

from screaming when an airplane noise caused him to believe a car was approaching. The knife was at all times within appellant's control.

The appellant's acts of violence or intimidation need not be done for the very purpose of taking the victim's property to constitute robbery.

> "In other words, does robbery require that the defendant's violence-or-intimidation acts be done for the very purpose of taking the victim's property, or is it enough that he takes advantage of a situation which he created for some other purpose? The great weight of authority favors the latter view, holding that under the circumstances it is robbery; . . . ."

LaFave & Scott, *Criminal Law* (1972), at 701-702. *See, Cobern v. State,* 273 Ala. 547, 142 So. 2d 869 (1962); *Howard v. Commonwealth,* 313 Ky. 667, 233 S.W.2d 282 (1950); *Alaniz v. State,* 147 Tex. Cr. App. 1, 177 S.W.2d 965 (1944).

We conclude that the trial court did not err in giving State's instruction No. 22 over appellant's objection.

IV.

The appellant contends that the trial court should have granted his motion for judgment of acquittal for robbery in the first degree and unauthorized operation of a propelled vehicle at the close of the State's case.

We have stated in *State v. Kahalewai,* 55 Haw. 127, 128, 516 P.2d 336, 337 (1973):

> "As to the motion for acquittal, we have held that: This court will not disturb the ruling of a lower court if the evidence of the prosecution is such that 'a reasonable mind might fairly conclude guilt beyond a reasonable doubt.' *State v. Rocker,* 52 Haw. at 346, 475 P.2d at 690."

In the preceding discussion of State's requested instruction No. 22 we considered and evaluated some of the evidence adduced by the State to prove robbery in the first degree. We are satisfied that the evidence would permit a reasonable mind to conclude beyond a reasonable doubt that appellant

took forty dollars and the Mustang automobile from the complaining witness through the threat of the imminent use of force. The trial court, thus, properly denied the appellant's motion for acquittal.

V.

Appellant contends that sentencing him to life imprisonment as a multiple offender amounted to a violation of his rights under the Eighth Amendment to the United States Constitution and Article I, Section 9[9] of the Constitution of the State of Hawaii by subjecting him to cruel and unusual punishment.

HRS § 706-661 and HRS § 706-662 read in relevant part as follows:

"Sec. 706-661 *Sentence of imprisonment for felony; extended terms.*

In the cases designated in section [706-] 662, a person who has been convicted of a felony may be sentenced to an extended indeterminate term of imprisonment. When ordering such a sentence, the court shall impose the maximum length of imprisonment which shall be as follows:

(1) For a class A felony — life;

\*        \*        \*        \*        \*."

Sec. 706-662 *Criteria for sentence of extended term of imprisonment for felony.*

---

[9] The Eighth Amendment to the Constitution of the United States reads as follows:

Excessive bail should not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted.

Article I, Section 9 of the Constitution of the State of Hawaii reads as follows:

Section 9. Excessive bail shall not be required, nor excessive fines imposed, nor cruel or unusual punishment inflicted. The court may dispense with bail if reasonably satisfied that the defendant or witness will appear when directed, except for a defendant charged with an offense punishable by life imprisonment.

The court may sentence a person who has been convicted of a felony to an extended term of imprisonment if it finds one or more of the grounds specified in this section. The finding of the court shall be incorporated in the record.

*       *       *       *       *

(4) Multiple offender. The defendant is a multiple offender whose criminality was so extensive that a sentence of imprisonment for an extended term is warranted. The court shall not make such a finding unless:

(a) The defendant is being sentenced for two or more felonies or is already under sentence of imprisonment for felony; or

(b) The maximum terms of imprisonment authorized for each of the defendant's crimes, if made to run consecutively would equal or exceed in length the maximum of the extended term imposed, or would equal or exceed 40 years if the extended term imposed is for a class A felony.

Appellant was sentenced for a total of four felonies, with a possible aggregate sentence of sixty-five years, as computed for purposes of HRS § 706-662. Three of the four were class A felonies; all four involved the use of force or the threat of force against a person. Appellant does not challenge the constitutionality of these statutory provisions, or the procedural aspects in imposing the extended term of imprisonment.

The recidivist or habitual offender statutes of several states have been upheld in the face of constitutional challenge. *Spencer v. Texas,* 385 U.S. 554, *rehearing denied,* 386 U.S. 969 (1967); 33 A.L.R. 3d 343, 371, § 11 and fn. 11.

A penalty which is legal under the applicable sentencing statute is generally held not to be cruel and unusual, if the statute itself is constitutionally valid. *Smith v. United States,* 407 F.2d 356 (8th Cir. 1969), *cert. denied,* 395 U.S. 966; *Hedrick v. United States,* 357 F.2d 121 (10th Cir. 1966); *United States v. Martell,* 335 F.2d 764 (4th Cir. 1964); *Lindsey v. United States,* 332 F.2d 688 (9th Cir. 1964).

In a few extreme cases, sentences have been held to be unconstitutionally cruel and unusual, notwithstanding the existence of an underlying statute which was not unconstitutional on its face. *Workman v. Commonwealth,* 429 S.W.2d 374 (Ky. 1968); *Faulkner v. State,* 445 P.2d 815 (Alaska 1968); *Cox v. State,* 203 Ind. 544, 553-560, 181 N.E. 469, 470-472 (1932).

Although the expression "cruel and unusual," as used when the Eighth Amendment to the Constitution of the United States was originally formulated, was directed against barbarous forms of punishment which amounted to torture, modern courts apply it to those forms of punishment or sentences of such duration that shock the conscience of reasonable persons or outrage the moral sense of the community, in light of the developing concepts of decency.[10] *Boerngen v. United States,* 326 F.2d 326 (5th Cir. 1964); *Green v. Teets,* 244 F.2d 401 (9th Cir. 1957); *Jordan v. Fitzharris,* 257 F. Supp. 674 (1966); *Workman v. Commonwealth, supra; Cannon v. Gladden,* 203 Or. 629, 281 P.2d 233 (1955); *Cox v. State, supra.* This is the appropriate standard by which to judge if a sentence is cruel or unusual under both the Constitution of the United States and the Constitution of the State of Hawaii.

A sentence which is greatly disproportionate to the crime may shock the conscience and outrage the moral sense of the community. *Workman v. Commonwealth, supra; Faulkner v. State, supra; Cox v. State, supra.* However, constitutional challenges to the disproportionate length of a sentence, sanctioned by a constitutionally valid statute, fail more often than they succeed. See generally, 33 A.L.R.3d 343, 359-369, and cases cited therein.

The case at bar is distinguishable from the leading case cited by appellant, *Workman v. Commonwealth, supra.* In the *Workman* case a sentence of life imprisonment without possibility of parole for the crime of rape was held to be cruel and

---

[10] See, Trop v. Dulles, 356 U.S. 86 (1958); Goss v. Bomar, 337 F.2d 341 (6th Cir. 1964); Jordan v. Fitzharris, 257 F. Supp. 674 (1966); Austin v. Harris, 226 F. Supp. 304 (1964); Bongiorno v. Ragen, 54 F. Supp. 973 (1944), aff'd 146 F.2d 349 (7th Cir.), cert. den. 325 U.S. 865.

unusual as applied to two fourteen year old juveniles. In the instant case the appellant is an adult offender with a previous adult felony record. He received his sentence as a multiple offender, not for forcible rape alone, but for forcible rape, sodomy, robbery and sexual abuse. Moreover, the appellant is eligible for parole.

In a case decided after *Workman v. Commonwealth, supra,* the Kentucky Supreme Court held that the imposition of a life sentence without parole upon conviction for the crime of rape did not constitute cruel and unusual punishment. *Martin v. Commonwealth,* 493 S.W.2d 714 (Ky. 1973). The Missouri Supreme Court upheld a sentence of life imprisonment for rape in the case of a second offender in *State v. Drope,* 462 S.W.2d 677 (Mo. 1971) and a 99 year sentence for a statutory rape conviction in *State v. Agee,* 474 S.W.2d 817 (Mo. 1971), against constitutional challenges contending such sentences constituted cruel and unusual punishment.

We are most reluctant to question the trial court's wisdom in assessing the appellant's potential for rehabilitation. In this case, furthermore, the trial court's pessimistic outlook derives substantial support from appellant's record.

In view of the seriousness of appellant's crimes and extensiveness of his record, regarded in the light of developing concepts of decency and fairness, we do not find a life sentence so disproportionate to his crimes as to be shocking to the conscience or an outrage to the moral sense of the community. Thus, we hold that the extended sentence imposed upon appellant does not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution of the United States and Article I, Section 9 of the Constitution of the State of Hawaii.

Affirmed.

*Stuart H. Oda (Kushi, Shimokusu & Kushi* of counsel) for defendant-appellant.

*Paul M. De Silva,* Prosecuting Attorney, County of Hawaii, for plaintiff-appellee.