[No. 5540–1. Division One. October 23, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. DONNIE RAY STIRGUS, *Appellant.*

628

*Steinberg & Steinberg* and *Jack Steinberg,* for appellant.

*Christopher T. Bayley, Prosecuting Attorney,* and *J. Robin Hunt, Deputy,* for respondent.

DORE, J.—The defendant was acquitted of first–degree rape and first–degree kidnapping but was convicted of the lesser offense of "unlawful imprisonment." Defendant appeals.

## ISSUES

1. Was there substantial evidence in the record to justify the defendant being convicted of "unlawful imprisonment"?

2. Whether the kidnapping charge against the defendant was incidental to the rape charge, and the court erred in not dismissing it?

3. Did the trial court err in allowing testimony of the defendant's past acts of rape and assault against the victim for the purpose of proving intent and lack of accident or mistake?

4. Did the trial court err in refusing to permit the introduction into evidence of the victim's "love letters"?

## FACTS

The defendant and the complaining witness (hereinafter identified as "Smith" for purposes of protecting the victim's identity), met each other at a cocktail lounge near Sea–Tac Airport in April 1975, and within a few months they com-

menced living together. In February 1976, Smith temporarily left defendant. They eventually reconciled and in May of 1976 they moved into the Sunset View Apartments, Des Moines, where they lived until September when Smith moved out saying she no longer loved the defendant. Smith then moved to her own apartment some 5 miles away. Subsequently defendant occasionally came to see her and on those occasions had sexual relations with her. However, within a short time Smith told defendant she no longer wanted to see him. She obtained an unlisted phone number, changed the door locks on her apartment, and asked her neighbors to call the police if the defendant came to her apartment.

At the trial Smith testified that after she terminated her living arrangement with the defendant in September 1976, he came back uninvited and forcefully raped her on two occasions, between the termination of that living arrangement and November 17, 1976, on which date it is charged Smith was forcefully raped by the defendant.

On November 17, 1976, Smith was leaving her apartment to go to work when she was confronted in the hallway of her apartment by the defendant. According to Smith's testimony, he pushed her back inside with his hand over her mouth and told her she would not be going to work that day. In a telephone call to her co-worker friend advising she would not be able to work that day, she was unable to communicate that she was in physical danger. Shortly after the phone call, defendant forcefully took Smith by the neck and led her to her car. Upon arriving at the parking lot of defendant's home, she testified that the defendant slapped her, and despite her crying, protestation and resistance, she was forcibly raped. The defendant then returned Smith's car to her and she drove back to her apartment where police officers were waiting. She related what had happened and as a result defendant was charged with rape and kidnapping in the first degree.

## DECISION

ISSUE 1.

The guilty verdict of unlawful imprisonment must be dismissed unless it is supported by substantial evidence. Defendant's counsel himself requested the court to instruct on the lesser offense of first–degree kidnapping, to wit: "false imprisonment." Smith's testimony, if believed by the jury, that she was forcibly taken from her apartment the morning of November 17, 1976, and then was physically required to get into her car and drive some 5 miles away in itself would be sufficient evidence to establish the charge. Smith's testimony is corroborated by three independent witnesses which support a guilty verdict of unlawful imprisonment. The co–worker whom she telephoned heard Smith tearfully say that she would not be coming to work. Exiting the apartment, Smith managed to kick the door of a neighbor who then viewed the scene out of the window whereby Smith was being forcibly led away by the defendant, and the neighbor was so concerned that she called the police. And lastly, a cab driver observed Smith being led away by the defendant and testified that the defendant threw Smith into the car "like a sack of potatoes." The testimony of Smith and three independent witnesses in the aggregate constitute an unassailable mountain of evidence supporting the jury verdict of "unlawful imprisonment."

Defense counsel not only submitted the unlawful imprisonment instruction of which he now complains, but seemed to indicate to the jury that "false imprisonment" was the only charge which his client might possibly be guilty of, when he stated in his final argument:

Let's take, arguendo, just for the purpose of discussion and within the purview and within the ambit of . . . [Smith's] testimony, that what she says is true, that she is not mentally unstable as we have suggested to you.

At best it can be said that Stirgus took her for a *ride to his parking lot for the purpose of raping her;* that's the best that you can come up with, if you believe everything

that the prosecution has presented . . .
(Italics ours.)

It is interesting that counsel used the word "rape" rather than "intercourse" and the jury apparently believed just that and convicted the defendant of "false imprisonment."

ISSUE 2.

The defense next contends that the kidnapping charge, including the lesser offense of "unlawful imprisonment," should have been dismissed by the trial judge as the "kidnapping charge" was incidental to the rape charge. The courts in some states adhere to a merger doctrine whereby if a kidnapping is merely incidental to a commission of a rape, the defendant can be convicted only of rape—and the kidnapping charge must be dismissed. The "merger doctrine" has been applied in the state of California, *People v. Nelson,* 233 Cal. App. 2d 440, 43 Cal. Rptr. 626 (1965), and in New York, *People v. Hatch,* 25 App. Div. 2d 606, 267 N.Y.S.2d 651 (1966).

A reading of the cases in these states indicates that the merger doctrine is only applied where, in fact, one crime is in fact incidental to the other. Where there are sufficient facts to support a charge of two crimes, we cannot say as a matter of law that one charge is incidental to the other.

In the subject case the defendant did a number of things over a period of time that would have supported a conviction of "kidnapping" independent of rape. The defendant (1) prevented Smith from going to work, (2) required her to leave her apartment under force and intimidation, (3) threw her in her car like a "sack of potatoes", (4) required her to drive her car some 5 miles away, (5) restrained her liberty for a number of hours, and (6) convinced three independent witnesses that she was in great physical jeopardy and it was necessary to immediately summon the police.

█ In denying defendant's motion to dismiss the kidnapping charge, the trial court ruled that it could not as a matter of law declare the kidnapping charge to be a nullity.

The trial court correctly decided that the question of whether the abduction was merely incidental to the rape was a question of fact for the jury, guided by appropriate instructions of the court. The trial court concluded:

I think that there is sufficient evidence in this case of transportation of the complaining witness for a distance of four to six miles on a public highway in a car raises a jury question as to first, whether there was a kidnapping; secondly, whether the kidnapping was incidental to a rape.

The court based this decision on its view of the sufficiency of the evidence judged by applicable standards:

A challenge to the sufficiency of the evidence or a motion having that effect admits the truth of the state's evidence and all inferences that reasonably can be drawn therefrom. Furthermore the evidence is incorporated most strongly against the defendant and in a light most favorable to the state.

The jury was instructed as to all the elements they must find in order to convict the defendant of kidnapping with the intent to facilitate the commission of a rape. In addition, they were instructed that they could not convict on both of the original charges if they found as a matter of fact that the kidnapping was merely incidental to the rape. Phrased thus, this question has been held a proper one for the jury: *State v. Dubina,* 164 Conn. 95, 318 A.2d 95, 98 (1972); *People v. Adams,* 389 Mich. 222, 205 N.W.2d 415 (1973). The jury was instructed that in making this factual determination they could consider any evidence they chose, including the following factors: the time and distance involved; whether there was an increased risk of harm to the victim resulting from the abduction; whether the kidnapping was completed prior to the rape, whether any extra force was utilized; and whether there were any other purposes other than the intended crime in the mind of the perpetrator.

The trial court correctly submitted to the jury the factual issue of whether the kidnapping was incidental to or separate from the rape.

Issue 3.

During the trial, four instances of defendant's previous misconduct were testified to:

1. The hairbrush spanking of October 1975 while Smith and defendant were living together.

2. The blackened eyes of February 1976. One evening Smith informed defendant that she was going to a party. Apparently this displeased him, for when she returned home he gave her some hard slaps in the face, causing black eyes, which resulted in double vision that lasted for a week.

3. The alleged rape at knifepoint on October 30, 1976. Approximately a month after Smith ceased living with the defendant, she was awakened about 3 a.m. when he entered her apartment. She testified he had been drinking and had obtained a long serrated knife in the kitchen which he placed at her throat, ripped off her pajamas and forced her to have sexual relations with him.

4. The alleged rape of November 3, 1976, when she informed him that she no longer wanted to continue a relationship with him. He insisted on intercourse "once more" and she related that he raped her in her apartment.

Did the trial judge err in permitting testimony of these four incidents of misconduct by the defendant?

In *State v. Weiss*, 73 Wn.2d 372, 377, 438 P.2d 610 (1968), in a prosecution for unlawful possession of marijuana, evidence that the defendant had previously smoked marijuana in a house occupied by him and that he knew on a prior occasion that there was marijuana in the house, tended to prove the allegation of construction possession, *i.e.*, that defendant knew of the presence of the marijuana in the house where he resided; and such evidence therefore was admissible even though it also tended to prove another offense not charged in the information. The court stated at page 377:

> The defendant contends that the trial court erred in admitting evidence over objection which related to other allegedly criminal acts committed by the defendant; namely, Nason's testimony that he and Weiss had

smoked marijuana together and that Weiss knew there was marijuana in the house on a prior occasion.

Evidence of the commission of collateral criminal acts is admissible, as we said in *State v. Vindhurst*, 63 Wn.2d 607, 612, 388 P.2d 552 (1964), if it

comes within one of the recognized exceptions: (1) to show motive or intent, (2) the absence of accident or mistake, (3) a common scheme or plan, (4) identity, or (5) if the evidence is relevant to any material issue before the jury. *State v. Goebel*, 36 Wn. (2d) 367, 218 P. (2d) 300 (1950). Or, such evidence may be admitted if it tends to prove some essential ingredient of the crime charged in the information. *State v. Dinges*, 48 Wn. (2d) 152, 292 P. (2d) 361 (1956), and cases cited.

The evidence complained of in this case was properly admitted because this evidence had a direct bearing on the issue of constructive possession, that is, whether the defendant knew of the presence of the marijuana found in the house where the defendant resided. See *State v. Hall*, 41 Wn.2d 446, 249 P.2d 769 (1952).

In *Umbaugh v. State*, 250 Ark. 50, 54–60, 463 S.W.2d 634, 636 (1971), defendant was charged with kidnapping a 17–year–old girl for the purpose of committing rape. Evidence that he had raped another some 15 months earlier in a similar fashion was properly admitted for the purpose of showing motive and intent. The court in *Umbaugh* said, citing from *Alford v. State*, 223 Ark. 330, 266 S.W.2d 804, 806:

"No one doubts the fundamental rule of exclusion, which forbids the prosecution from proving the commission of one crime by proof of the commission of another. The State is not permitted to adduce evidence of other offenses for the purpose of persuading the jury that the accused is a criminal and is therefore likely to be guilty of the charge under investigation. In short, proof of other crimes is never admitted when its only relevancy is to show that the prisoner is a man of bad character, addicted to crime."

In another paragraph in *Alford* we also said:

"The rule is designed to protect the innocent, but it is often invoked as a basis for excluding *any* evidence that tends to show the commission of another offense.

We have repeatedly rejected unfounded appeals to the protection of the basic rule of exclusion. If other conduct on the part of the accused is independently relevant to the main issue—relevant in the sense of tending to prove some material point rather than merely to prove that the defendant is a criminal—then evidence of that conduct may be admissible, with a proper cautionary instruction by the court. 'While the principle is usually spoken of as being an exception to the general rule, yet, as a matter of fact, it is not an exception; for it is not proof of other crimes as crimes, but merely evidence of other acts which are from their nature competent as showing knowledge, intent or design, although they may be crimes, which is admitted. In other words, the fact that evidence shows that the defendant was guilty of another crime does not prevent it being admissible when otherwise it would be competent on the issue under trial.' *State v. DuLaney,* 87 Ark. 17, 112 S. W. 158."

. . .

Thus our cases very plainly support the common–sense conclusion that proof of other offenses is competent when it actually sheds light on the defendant's intent; otherwise it must be excluded. * * *"

. . .

In 2 Wigmore on Evidence, 3rd Ed., § 302, the reasoning and basis for the admission of prior criminal acts as evidencing intent is set out in the following language:

". . . similar results do not usually occur through abnormal causes; and the recurrence of a similar result (here in the shape of an unlawful act) tends (increasingly with each instance) to negative accident or inadvertence or self–defence or good faith or other innocent mental state, and tends to establish (provisionally, at least, though not certainly) the presence of the normal, *i. e.,* criminal, intent accompanying such an act; and the force of each additional instance will vary in each kind of offense according to the probability that the act could be repeated, within a limited time and under given circumstances, with an innocent intent. The general canon of logical inference already examined (*ante* §§ 31, 32) is here applied and illustrated.

Such is the theory of evidencing Intent, as expounded, in various phrasings and for all sorts of offenses, in repeated judicial utterances.

\* \* \*

. . .

Yet, in order to satisfy this demand, it is at least necessary that prior acts should be *similar.* Since it is the improbability of a like result being repeated by mere chance that carries probative weight, the essence of this probative effect is the likeness of the instance.

. . . "

In the case at bar, intent to commit a crime (rape) is a primary element of the kidnapping charge under which the appellant was tried and for which he was convicted. The prosecuting witness and the appellant's accomplice testified that the appellant forcibly and without her consent transported her to a secluded area on "Wildcat Mountain" and there put her in fear of her life and ravished her. The appellant testified that the prosecuting witness voluntarily accompanied him to "Wildcat Mountain" and voluntarily submitted to him.

Now, under these circumstances, if the state had proven by the testimony of ten other women that the appellant had also in recent months taken them to this "Wildcat Mountain" against their will and there ravished them, there would be little question but that such testimony would be admissible; not to prove the crime of rape, or as for that matter, to prove that the prosecuting witness was taken to "Wildcat Mountain" by force or against her will, but for the purpose of showing the appellant's motive and intent in taking her to the secluded area on "Wildcat Mountain."

. . .

We are of the opinion that the testimony was admissible, under all the facts of this case, for the limited purpose it was offered; and that the trial court did not commit reversible error in admitting it under the proper instructions given by the court as to its use and purpose.

In *State v. Thorne,* 43 Wn.2d 47, 260 P.2d 331 (1953), our Supreme Court held that prior acts of sexual misconduct may be admitted in order to show the intent or motive of the existing charge. On pages 60–61 of the cited case it was stated:

It is axiomatic that an accused must be tried for the offense charged in an information, and the introduction of evidence of unrelated crimes can be grossly and highly prejudicial. *State v. Goebel,* 36 Wn.(2d) 367, 218 P.(2d) 300 (1950). However, in the trial of cases involving carnal intercourse between the sexes it is permissible to show prior acts of sexual misconduct with the offended female even though such prior act is in itself a crime. *State v. Jordan,* 6 Wn.(2d) 719, 108 P.(2d) 657 (1940) and cases there cited. See, also, *State v. Collier,* 23 Wn.(2d) 678, 162 P.(2d) 267 (1945); and 2 Wigmore on Evidence (3d ed.) 355 *et seq.,* §§ 398, 399, and the annotation on "Admissibility, in prosecution for sexual offense, of evidence of other similar offenses," 167 A.L.R. 565 (1947). Such evidence is admitted for the purpose of showing the lustful inclination of the defendant toward the offended female, which in turn makes it more probable that the defendant committed the offense charged.

Nor does the fact that the confession relates to a sexual offense of a character different from that charged make it less admissible. The important thing is whether it can be said that it evidences a sexual desire for the particular female. 2 Wigmore on Evidence (3d ed.) 367, § 399, says:

"The *kind of conduct* receivable to prove this desire at such prior or subsequent time is *whatever would naturally be interpretable* as the expression of sexual desire.

"Sexual intercourse is the typical sort of such conduct, but indecent or otherwise *improper familiarities* are equally significant."

*See also State v. Clough,* 33 Del. 140, 132 A. 219 (1925) and *State v. Morgan,* 146 Wash. 109, 261 P. 777 (1927).

■ As defendant was charged with first–degree rape, it was proper to introduce into evidence the alleged rapes of October 30, 1976, and November 3, 1976, on the issue of motive and intent as to whether the defendant intended to rape Smith on the morning of November 17, 1976. The other two incidents complained of, *i.e.,* the hairbrush spanking of October 1975 and the black eyes of November 3, 1976, are relevant on the kidnapping and rape issues as to why Smith didn't run out of the car and try to get away or put up a greater resistance than she did. Basically, the

sole issue in the subject case is whether or not there was consent by the victim. Forcible compulsion is an essential element of the charge of first–degree rape. The past acts of physical abuse by the defendant upon the victim were relevant and they tend to explain her fear and submission to him on the date of the instant offenses.

See *People v. Nazworth,* 152 Cal. App. 2d 790, ·794, 313 P.2d 113, 116 (1957), wherein the prosecutrix, when asked why she had not jumped out of the defendant's car, responded over objection that she feared him because she knew he had previously beaten up two other women, he had had knife fights with his own father, and he had shot her aunt. In affirming the conviction the court reasoned that the effect of this knowledge on the prosecutrix' state of mind was relevant to the element of forcible compulsion.

Similar reasoning was applied in *State v. Iaukea,* 56 Haw. 343, 537 P.2d 724 (1975):

> It was important that the jury know all of the facts involved so that they would not mistakenly construe the complaining witness' calm manner and lack of screaming as indicative of consent or lack of forcible compulsion.

*State v. Iaukea, supra* at 352.

Employing a pair of apt metaphors, the Washington Supreme Court has said that otherwise admissible evidence should be excluded only when it tends "to generate heat instead of diffusing light, or, . . . where the minute peg of relevancy will be entirely obscured by the dirty linen hung upon it." *State v. Goebel,* 36 Wn.2d 367, 379, 218 P.2d 300 (1950).

In the subject case, the defense placed considerably more emphasis on the assaults than the prosecution. The "theory of the defense" was that the victim's consent to the intercourse on the date in question was strongly suggested by a pattern of continuing sexual relations with the defendant despite the physical abuse she had received from him in the past. On cross–examination of Smith, defense counsel went into the beating of February 1976 in great detail and also

elicited mention of the first beating, the so-called "hair-brush incident."

In closing argument defense counsel stated:

She enjoyed it even though he beat her on occasion, at least two and maybe even more times, but she kept coming back because of that strange and strong urge she felt within her. . . . After he did everything she says he did, she went back to him. I'm reminded of the person who pushes you away somehow with the left hand and pulls you back with the right. . . . I say that their conduct indicates a course of action followed by the two of them, which in essence is "I don't care how often he beats me, as long as he chooses me for his sexual partner."

Defense counsel skillfully utilized the prior assaults to his advantage in downplaying the prior rapes. Obviously counsel was endeavoring to have the jury believe that on the morning of November 17, 1976, Smith voluntarily and happily got into the car with the defendant en route to having enjoyable sexual relations with him, even though she knew she might be physically abused.

We hold that the trial court properly exercised its discretion in admitting testimony of defendant's prior acts of misconduct for the purpose of motive and intent. We find no error.

ISSUE 4.

Defendant next contends that the trial court erred in refusing to admit into evidence the five letters written by Smith to the defendant during March and April of 1976 when she was in California. These letters were written prior to the parties getting back together for a second time, and some 6 months before the rape and kidnap charges. Let us examine the five letters in sequence:

1. *Letter of March 11, 1976.* Letter stating she still loved defendant and wanted some time to be with herself. She expressed her desire to live with him again. If things worked out, she stated she ultimately wanted to marry him. Nothing sensational in this letter.

2. *Letter of March 16, 1976.* Letter is much the same as letter No. 1, wherein she expresses her continued love for defendant but says she is going to go out with other

men during the summer. She apologized for apparently not being able to talk to him when he called on the phone.

3. *Letter of March 30, 1976.* The third letter advised that she is now working. She still misses him and recites in general terms the good times they had in their previous relationship.

4. *Letter of March 31, 1976.* The fourth letter again professes her love for him. She states she is anxious to get together with him again and says she is jealous of other women that he is undoubtedly going out with. She describes some of her problems at work. Letter contains some unflattering statements that possibly might put her in a poor light with the jury.

5. *Letter of April 8, 1976.* The fifth and last letter is April 8, 1976. She says she still loves him and enjoys his phone calls and that when they get back together that possibly the dog will have to sleep with them. She also says that she is excited about seeing her kids. (Nothing inflammatory in this letter.)

The trial judge excluded these letters, holding that they were cumulative of testimony of both parties and they had no "illuminating relevance." The letters seemed to indicate that the parties separated because there was difficulty with her children when they came to visit and she wanted a change to get a little broader perspective in that regard in the event they started living together again. All five letters indicate her great love and affection for the defendant. It was apparently the thrust of the defense that the letters indicate that Smith and the defendant were such excellent sex partners that even though he beat her up repeatedly during their relationship, she still wanted him. There is nothing contained in the letters which would indicate this type of feeling or Smith's acquiescence in being physically abused in order to continue to have defendant as her sex partner.

■ In Washington it is accepted that "[t]he limitation of testimony to avoid unnecessary repetition is within the discretion of the trial court." *State v. Weiss,* 73 Wn.2d 372, 378, 438 P.2d 610 (1968). In *State v. Kelly,* 3 Wn. App. 888,

478 P.2d 246 (1970), the defendant was denied the opportunity to put on additional testimony as to his weight and appearance on the date in question. The court of appeals reasoned: "The effect would be cumulative. In such circumstances refusing the defense the right to present additional witnesses is discretionary with the trial court. We find no abuse of discretion." *State v. Kelly, supra* at 890.

In *State v. Severns,* 13 Wn.2d 542, 125 P.2d 659 (1942), the trial court excluded a written note in a rape case. Our Supreme Court, in upholding the exclusion, stated at page 559:

> We appreciate that a witness may be impeached by the introduction of a writing signed by the witness, containing statements inconsistent with his or her testimony. But there is nothing in this letter or on the back thereof which is inconsistent with Betty's testimony, and there is no purpose of which we are aware that would make this letter admissible in this case.

In the subject case there was nothing in the five letters inconsistent or at variance with the testimony of the complaining witness and we find the letters are cumulative of the parties' testimony. The trial judge did not err in excluding these letters.

In summary, we hold that there was substantial evidence in the record upon which the jury found defendant guilty of unlawful imprisonment. We further hold that there is no merit to any of the defendant's assignment of errors.

Affirmed.

FARRIS, C.J., and JAMES, J., concur.

Reconsideration denied December 20, 1978.

Review denied by Supreme Court April 20, 1979.